## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

DEON BRADLEY,

        Plaintiff,

v.

BRUCE DRESEL and SANDY DRESEL,
husband and wife; SANNA BUCKBEE;
and, BUSTER MCLAURY,

        Defendants.

**MEMORANDUM OPINION
AND ORDER**
Civil File No. 04-1154 (MJD/JGL)

_____

William L. Norine, Esq., Norine Law Firm, counsel for Plaintiff.

Michael D. Carr, Emmer Law Firm, counsel for Defendants Bruce and Sandy
Dresel.

James Ranheim, Reding & Pilney, counsel for Defendant Sanna Buckbee.

Buster McLaury [no appearance]

_____


## I.   INTRODUCTION

      This case is before the Court on the Motions for Summary Judgment

brought by Defendants Bruce and Sandy Dresel and Defendant Sanna Buckbee.

The Court heard argument on these Motions on May 13, 2005.

1

## II.     FACTUAL BACKGROUND

Plaintiff Deon Bradley has several years of experience in riding and training horses.  She started riding horses at the age of four, and began training horses when she was eight years old.  Based on her training experience, Bradley recognized that colts in particular can be unpredictable and can move in unpredictable ways, particularly in the training process.  Bradley understood, on the date of the accident at issue in this case and based on her experience, that a person should be careful around young colts that are saddled for the first time due to the tendency of a colt to exhibit "typical young horse stuff," such as biting, bucking, and running.

In January, 2003, Bradley attended a horse training clinic held at the Dresel Defendants' arena and conducted by Defendant Buster McLaury.[1]  Bruce Dresel called Bradley about a week before the clinic, invited her to attend the clinic (free of charge), and asked her to train four (4) of his horses, in his barn, for the two months after the clinic ended.  Bradley knew Dresel only slightly as an acquaintance of her father's.  She had not been at a clinic before Dresel invited her (though she was familiar with the arena set up at his barn), and did not know Buster McLaury.

---

[1]     Defendant McLaury has not put in an appearance in this action.

Bradley arrived at the Dresels the evening before the official start of the clinic and unloaded her own horses, which would be staying there for training afterwards.  McLaury was already working colts in a round pen set up in the Dresels' arena when Bradley arrived.  There were four colts running loose in the arena when Bradley arrived, which, while not usual procedure, was not a situation unfamiliar to her.  Among the loose horses was Jelly Bean, whose owner is Defendant Sanna Buckbee.  At the time of the seminar, Jelly Bean, like the other colts in the pen, had not previously had on a saddle.

McLaury released horses from the pen into the arena after he was done working with the horse for awhile.  Prior to releasing the horses, McLaury warned the spectators to be aware of the horses running in the arena.  Buckbee contends that McLaury specifically reminded spectators that these horses could be unpredictable and should be shooed away if they came too close.    Bradley denies that these warnings were given.

After JellyBean was released into the arena, Bradley observed that the horse would get "scared for no reason and take off running."  Bradley did not find this behavior unusual for a horse under saddle for the first time.  Bradley acknowledges that Buckbee told her, when JellyBean was released, that the horse "will flip out for no [reason]."  However, Bradley understood Buckbee's response to JellyBean's running around as "joking about it."  Buckbee testified that she told

3

Bradley that the "horse was, in horse terms, on the 'hotter' side."  At some point, JellyBean calmed down and came and stood by Buckbee.  No one, including Bradley and Buckbee, moved away from the horse.  But then, something spooked the horse, it jumped and knocked over Bradley, breaking her leg in the process.  Prior to this incident, Buckbee had never observed JellyBean to be spooked like she was on the day of the incident.

Bradley submitted the expert report and opinion of Kristin Griffiths in opposition to Defendants' Motion.  Ms. Griffiths has been a professional horse trainer for 27 years.  In her opinion, the "standard of care was breached when horses were allowed to essentially roam free with no restraint after being released from the" training pen.  Griffiths also opined that the "round pen" quick-training method "often does not render reliable behavioral results in view of the short time intervals and the method itself."  Finally, in Griffiths' opinion, "a horse with a known propensity will more often than not act in a manner consistent with that propensity."

## III.   DISCUSSION

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  In considering this Motion, the Court must view the evidence in a light most favorable to the nonmoving party.  Fed.R. Civ. P. 56; *Celotex Corp. v. Catrett*,

477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986); *Kraft v. Ingersoll-Rand Co.,*

*Inc.*, 136 F.3d 584, 586 (8th Cir. 1998).  The party seeking summary judgment

bears the burden of showing that the absence of disputed material facts means

that a reasonable jury could return only a verdict for the movant.  *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).   In

considering whether this burden has been met, the Court must take the facts in

Bradley's favor on the negligence claims against the Dresels and Buckbee.  *Walk v.*

*Starkey Machinery, Inc.*, 180 F.3d 937, 938 (8th Cir. 1999).

The Dresel defendants argue that they did not owe a duty of care to

Bradley because any danger was known or obvious to Bradley given her

experience with horses, in particular with training young horses.  In the

alternative, the Dresels argue that Bradley's negligence claims are barred by the

doctrine of assumption of  risk.  Again relying on Bradley's knowledge and past

experience with horses, the Dresels argue that Bradley assumed the risk because,

notwithstanding her extensive knowledge of and experience with horses, she did

not move away from JellyBean or ask anyone to secure the horse, even after

observing the horse's behavior and hearing Ms. Buckbee's warning.

Defendant Sanna Buckbee relies on the assumption of risk doctrine, arguing

similarly to the Dresels that Bradley knew of the risk associated with horses

including young, untrained horses, appreciated the danger of that risk, and

voluntarily assumed it.

A.      **The Dresels' Duty of Care**

The Dresels' Motion on the negligence claims begins with the argument
that no duty of care was owed to Bradley.

A negligence claim requires proof of (1) a duty of care, (2) breach of that
duty, (3) the breach is the proximate cause of the injury, and, (4) injury.  *Louis v.
Louis*, 636 N.W.2d 314, 318 (Minn. 2001).  The landowner's duty is generally one
of "reasonable care for the safety of all such persons invited upon the premises."
*Id.* (quoting *Sutherland v. Barton*, 570 N.W.2d 1, 7 (Minn. 1997)).  Generally, the
existence of a duty is a legal question for the court.  *Id.*

The Dresels' duty, as landowners, does not extend to "harm caused by
known or obvious dangers unless the landowners should anticipate the harm
despite its obvious nature."  *Sutherland*, 570 N.W.2d at 7.  A "known or obvious"
danger "denotes not only knowledge of the existence of the condition or activity
itself, but also appreciation of the danger it involves."  *Louis*, 636 N.W.2d at 321.

In *Sutherland*, the decedent was an electrician with 30 years of experience.
He was "well aware of the danger of working near live buss bars [that conduct
electrical energy]."  *Id.* at 3 & n. 2.  He had warned others of the dangers of
working near live buss bars.  On the day of the accident, the decedent's foreman
pointed out the location of the live buss bars and reminded the decedent to "be

very careful." *Id.* at 4.  However, the decedent was later electrocuted while using

a metal tape measure that came into contact with the bars.  *Id.*  The Minnesota

Supreme Court concluded that the landowner did not owe a duty to plaintiff's

decedent.

> Sutherland knew of the danger involved in working near exposed live
> buss bars.  He was a licensed electrician with 30 years of experience.
> He had worked near live buss bars before and in fact had warned
> others of the danger inherent in such a task. . . . There is no dispute
> that the danger was known and obvious to Sutherland.

*Id.* at 7.  The Court also concluded that the landowner had no reason to anticipate

that harm to the decedent, notwithstanding its obvious nature, because "Waldorf

[the landowner] had no reason to anticipate that Muska, its independent

contractor, and Sutherland, its contractor's employee, would proceed to

encounter the danger of the live buss bars without taking the necessary safety

precautions."  *Id.*  Thus, the Court concluded that summary judgment was

properly entered in the landowner's favor.  *See also Larson v. Larson*, 373 N.W.2d

287, 289 (Minn. 1985) (no duty to warn of possible criminal activity at home

where possibility that earlier threat would mature into harm "was so speculative

and unforeseeable" – reversing jury verdict for plaintiff); *Munoz v. Applebaum's*

*Food Market, Inc.*, 293 Minn. 433, 434, 196 N.W.2d 921, 922 (Minn. 1972) (hazard

– pool of water on the floor – was obvious if plaintiff had been looking); *Holland v.*

*City of Renville*, No. C36-03-328, 2003 WL 21962020 at 3 (Minn. App., Aug. 19,

2003) (upholding summary judgment where no duty owed to warn about uneven sidewalk since plaintiff was aware of condition).

Typically, a horse owner owes a duty to warn others of known dangerous propensities of the horse.  See *Boyer v. Vandekamp*, No. C3-96-475, 1996 WL 422549 at *2 (Minn. App., July 30, 1996).  Summary judgment can be entered on this duty.  For example, in *Barton v. Irish*, the court reversed a summary judgment in favor of the horse owner (on the basis of disputed facts on causation), but upheld summary judgment in favor of the worker that saddled the horse.  No. C7-02-280, 2002 WL 31056920 (Minn. App., Sept. 17, 2002).  Barton, the plaintiff, "had extensive experience with training and breaking horses."  *Id.* at *2.  Even though the court recognized that "horses are generally unpredictable animals," the particular horse in question had "never bucked before" the plaintiff was injured.  *Id.*  The worker who saddled the horse had no special relationship with the horse's owner, the owner did not control the worker's actions, and "the two men did not communicate about preparing for the trail ride."  *Id.* at *3.  Thus, the court concluded as a matter of law that the worker owed no legal duty to plaintiff. *Cf. Macho v. Mahowald*, 374 N.W.2d 312, 315 (Minn. App. 1985) (reversing JNOV in favor of horse owner where owner, aware of horse propensities, failed to warn rider).

In *Kryzer v. Passow*, the court upheld the entry of summary judgment in

favor of the defendant horse owner based on the lack of duty.  No. CX-00-270,

2000 WL 944812 (Minn. App., July 22, 2000).   The plaintiff, who was injured

when he was riding a mare in the company of her unweaned foal, argued that the

defendant had superior knowledge regarding the mare's propensities.  However,

the court pointed out that the plaintiff was "an able-bodied adult who had ridden

this particular horse many times.  He knew of the common risks of horseback

riding and was aware of the bond between a mother animal and her offspring."

*Id.* at *2.  Under these circumstances, the court found the horse's owner owed no

duty.

Taking the undisputed facts in Bradley's favor, these decisions confirm that

there are no disputed facts with respect to the Dresels' duty as either landowners,

or as a horse owner.  First, the Dresels did not own JellyBean.  Second, there are

no facts in the record that suggest that the Dresels, as opposed to Buckbee, were

aware of JellyBean's propensities and thus could have or should have warned

Bradley.  *Cf. Macho*, 374 N.W.2d at 315 (owner's knowledge of horse's previous

dangerous or vicious propensities is sufficient to create jury issue on owner's

liability).  There is no evidence as to any special relationship between the Dresels

and Buckbee, other than Buckbee's attendance at the clinic, nor is there any

evidence that the Dresels controlled Buckbee's actions.  Indeed, there is no

evidence as to whether the Dresels had had JellyBean in their arena in the past.

Thus, the Dresels cannot, as matter of law, be held to a duty to warn of alleged dangers of which they had no knowledge.

Bradley also argues that the Dresels are vicariously liable as McLaury's agent. "[V]icarious liability is the 'imposition of liability on one person for the actionable conduct of another, based solely on a relationship between the two persons.'" *Sutherland,* 570 N.W.2d at 5 (citations omitted). The Dresels point out that McLaury alone had control of the monetary side of the training clinic. There is no other evidence in the record regarding the terms of the relationship between McLaury and the Dresels, let alone McLaury's knowledge, if any, of JellyBean's alleged propensities. Bradley had extensive experience in training colts and was aware of the skittish nature of those animals, particularly when saddled for the first time. Thus, the dangers known by the Dresels and McLaury were also known to Bradley.

Bradley argues that the Dresels had an obligation to create a setting in which Bradley had options available for her safety, citing cases imposing those requirements on landowners using facilities for sporting events. *See Wells v. Minneapolis Baseball & Athletic Ass'n*, 122 Minn. 327, 331, 142 N.W. 706, 708 (1913) ("management cannot be held negligent when it provides a choice between a screened in and an open seat"); *Swagger v. City of Crystal*, 379 N.W.2d 183, 186 (Minn. App. 1985) (no duty other than to provide some protected

10

seating).  Although it is not entirely clear that this type of training clinic is the

equivalent of the sports spectator cases cited, even if these cases are applicable,

the Dresels submitted photos of the training arena showing other places in the

arena where Bradley could have stood and remained away from the released

horses, namely a balcony area and the tack room.[2]

Based on the undisputed facts, the Court concludes as a matter of law that

the Dresels did not owe a duty to Bradley, and therefore summary judgment is

properly granted in the Dresels' favor.

**B.     Assumption of the risk**

Granting the Dresels' Motion for summary judgment on the basis of an

absence of a duty means that the assumption of risk argument need only be

addressed with respect to Defendant Sanna Buckbee.

It is important to note that Defendant Buckbee does not necessarily stand in

the same shoes as the Dresels.  For example, the Dresels did not own JellyBean,

---

[2]     After the hearing on these motions, Plaintiff's counsel submitted a letter
brief to point out that Plaintiff's injury occurred the day before the clinic began, and
based on Plaintiff's testimony that no protected area was available, the protected
seating must have been arranged after her injury.  Even taking the facts in Ms.
Bradley's favor, there are two problems with this theory.  First, the conclusion offered
("any protected seating was arranged after Ms. Bradley's injury") is counsel's
speculation.  There is no evidence in the record to support this conclusion.  Second, the
protected seating identified included the tack room, which Plaintiff admitted was
present when she arrived at the clinic and which would allow her to "see generally out
into the arena." [Bradley Depo. at 75-77 & Depo. Ex. 1]

Buckbee did.  The Dresels were the owners of the training arena, but Buckbee was not.  Thus, Defendant Buckbee's duty to Bradley is different from the duty analysis considered for the Dresels.  Indeed, Buckbee did not explain, in her summary judgment papers, the nature of the duty that she would be presumed to owe to Bradley.  Rather, Buckbee's summary judgment motion proceeded on the basis that, regardless of any duty owed, Bradley's claims are barred by the doctrine of assumption of risk.

Primary assumption of risk is "not so much an affirmative defense as an expression of the idea that the defendant owes a limited duty of care to the plaintiff with respect to the risk incident to their relationship."  *Olsen v. Hansen*, 299 Minn. 39, 43, 216 N.W.2d 124, 127 (1974); *see also Andren v. White-Rodgers Co.*, 465 N.W.2d 102, 105 (Minn. App. 1991) ("Primary assumption of the risk defines the limits of a defendant's duty to the plaintiff."); Steenson, The Role of Primary Assumption of Risk in Civil Litigation in Minnesota, 30 W. Mitchell L. Rev. 115, 159 (2003) (noting that, "primary assumption of risk relates to the duty issue in negligence law").  The Court therefore cannot ignore the nature of defendant Buckbee's duty here.  The duty of care that Buckbee owed, as the owner of the horse, requires that she warn others of known dangerous propensities of the horse.  *See Boyer v. Vandekamp*, No. C3-96-475, 1996 WL 422549 at *2 (Minn. App., July 30, 1996).

12

Primary assumption of risk applies where the plaintiff (1) has knowledge of the risk, (2) an appreciation of the risk, and (3) a choice to avoid the risk but voluntarily chooses to take it. *Schneider v. Erickson*, 654 N.W.2d 144, 149 (Minn. App. 2002); *Snilsberg v. Lake Washinton Club*, 614 N.W.2d 738, 746 (Minn. App. 2000). Application of the assumption of risk doctrine is "only appropriate under limited circumstances," and is typically a jury question, unless the facts are conclusive. *Schneider*, 654 N.W.2d at 148-49. *See also Hiller v. Huyck*, No. C9-94-1569, 1996 WL 45178 at *1 (Minn. App., Feb. 6, 1996) ("In even fewer cases is the evidence so clear and undisputed as to present no fact issues for the jury"). While the underlying theory of assumption of the risk is that the plaintiff effectively consents to relieve the defendant of its duty to plaintiff, that duty will not be relieved if plaintiff shows that defendant "enlarged the risk" to the plaintiff. *Pike v. Nesset,* No. C7-02-1882, 2003 WL 21060862 at *2 (Minn. App., May 13, 2003).

In *HIller,* the plaintiff was injured when, while shoeing defendant's horse, the horse kicked her. Plaintiff had asked the defendant, before beginning the shoeing job, if the horse was a "kicker." 1996 WL 45178 at *1. Defendant responded that the horse was "sore." Plaintiff completed the trimming on the front hooves without incident. When she began work on the rear hooves, the horse jolted, throwing plaintiff backward and pushing her into a stable door. After applying a restraining device, the plaintiff began work again, only to have

the horse kick her.  *Id.*

The court found on these facts that sufficient factual disputes remained on the application of assumption of risk.  While the plaintiff may have been aware of, and assumed, the general risks inherent in shoeing horses, she was ignorant of the specific horse's particular propensities.  *Id.* at *2 (while plaintiff "subjected herself to certain occupational dangers," the failure to disclose the horse's tendencies "prevented her from fully appreciating the risk and making an informed decision" about proceeding).  This failure, the court found, placed plaintiff "in a position of ignorance," thus subjecting her to increased risks.  *Id.*

Here, viewing the facts in a light most favorable to Plaintiff Bradley, it is undisputed that Bradley was aware of the general risks associated with young horses under saddle for the first time.  However, the disputed facts also support the inference that she was not aware of the specific risks associated with JellyBean's unrestrained presence in the arena.  For example, while Buckbee knew that JellyBean was on the hotter side, and disclosed this knowledge to Bradley, there is no evidence that Bradley understood this disclosure in terms of the specific risk it presented.  *See Reimer v. City of Crookston*, 326 F.2d 957-968-69 (8th Cir. 2003) (recognizing that Minnesota applies a detailed, rather than a generalized, inquiry into the particular risk posed).  Bradley points out that she viewed Buckbee's response to JellyBean's antics in the arena as "joking about it."

14

In addition, Bradley points out that no one, including Buckbee, moved out of the way when JellyBean came and stood by those watching McLaury.  Whether Buckbee's warnings were adequate, and whether Bradley fully appreciated the risks but chose to accept them, are factual disputes for the jury's resolution, not for summary judgment.  *See Hiller*, 1996 WL 45178 at *2 ("Whether Juyck made statements or engaged in conduct that prevented Hiller from fully anticipating the risk of being kicked or enlarged her risk of being kicked is a fact issue that affects the application of the primary assumption of risk doctrine.").

In reaching this conclusion, the Court has considered the decision in *Grisim v. TapeMark Charity Pro-Am Golf*, 415 N.W.2d 874 (Minn. 1987), on which Buckbee relied.  However, the Court finds that case is distinguishable because the duties considered, but rejected, in that case are not applicable here.  For example, the Court agrees that Buckbee had no duty to offer Bradley a protected viewing area, but that is because Buckbee is not the landowner.  As noted above, to the extent that the Dresels had that duty as the landowners, the undisputed facts establish that the duty was fulfilled.  Factual disputes remain, however, as noted above, as to whether Buckbee fulfilled her duty as the horse's owner.  Next, to the extent the court in *Grisim* found that a participant did not owe a duty to a spectator at an event, *Id.* at 875-76, the undisputed facts do not support the conclusion that Buckbee was a participant while Bradley was merely a spectator.

Taking the facts in Bradley's favor, the reasonable inference is that both women, who were standing outside the pen watching McLaury, were spectators.

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

(1) the Dresel Defendants' Motion for Summary Judgment [Docket No. 11] is GRANTED, and the Dresels are hereby dismissed from this action.

(2) Defendant Sanna Buckbee's Motion for Summary Judgment [Docket No. 31] is DENIED.

Dated:  May 31, 2005

s/ Michael J. Davis
Michael J. Davis
United States District Court